NORVILLE FRASHER and MABEL FRASHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Frasher v. Commissioner
Docket No. 6460-71.
United States Tax Court
T.C. Memo 1973-268; 1973 Tax Ct. Memo LEXIS 19; 32 T.C.M. (CCH) 1267; T.C.M. (RIA) 73268; December 6, 1973, Filed Norville Frasher, pro se. Rudolf L. Jansen, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent has determined a deficiency in petitioners' income tax for the calendar year 1968 in the amount of $1,818.54. The sole remaining issue for our consideration is whether the gain derived from the sale of a multiple-unit apartment building during the year in issue is to be taxed as ordinary income or as long term capital gain. The petitioners have conceded a determined overstatement of rental expense and have agreed to respondent's determination of self-employment tax responsibility *20 in the event the gain from the sale of the apartment building is to be taxed as ordinary income. Mabel Frasher is a party hereto only because a joint return was filed for the taxable year and, consequently, Norville Frasher will hereinafter be referred to as petitioner.
FINDINGS OF FACT Some of the facts have been stipulated and are so found. When the petition herein was filed petitioners were residents of Huntington, West Virginia. Their joint Federal income tax return for 1968 was filed with the district director of internal revenue, Parkersburg, West Virginia. In the early 1940's petitioner went into the building business with his father, constructing mostly residences and apartment buildings, and over the years and up until the time of trial he and his father (or petitioner alone since about 1956, when his father died) constructed 36 or 37 apartment buildings containing from two to twelve units each. In July 1956 petitioner became a director and vice president of the Security Bank of Huntington in charge of the mortgage loan department and making all appraisals of real estate in connection with the bank's mortgage loans. Petitioner has remained in this position *21 at the bank continuously to the present time. After going with the bank in 1956 petitioner continued constructing one or two apartment buildings each year on his own account and he continues to do so. He testified, "its sort of in my blood." Between the years 1960 and 1972 petitioner constructed nine apartment buildings and seven residences; purchased one residence and purchased two vacant lots, all of which were sold within about one year of completion or acquisition date. There was a single exception of an apartment building constructed in 1951 and sold in 1960. The total receipts from these 20 transactions were $777,772 and the total taxable gains amounted to $100,351, all as shown on the following schedule: YEAR
DESCRIPTION
DATE ACQUIRED
DATE SOLD
SELLING PRICE
GAIN
DATE COMPLETED
1960
Apartment Building
6/51
7/60
$ 30,000.
$ 5,408.
Constructed
12/52
1961
Residence
1961
7/22/61
20,400.
1,800.
Constructed
1961
1962
Two Lots
4/62
8/62
10,100.
1,253.
Purchased
N/A
1963
Apartment Building
1963
1963
45,000.
7,492.
Constructed
1963
1964
Apartment Building
8/14/63
8/10/64
60,000.
7,827.
Constructed
2/1/64
Residence
9/12/62
9/15/64
17,250.
2,025.
Constructed
12/18/63
1965
Apartment Building
8/24/64
6/1/65
81,500.
8,493.
Constructed
1965
1966
Apartment Building
6/7/65
1/13/66
51,000.
8,600.
Constructed
1966
Apartment Building
12/28/65
8/15/66
62,000.
10,749.
Constructed
1966
1967
Residence
3/7/67
6/67
4,551.
484.
Purchased
N/A
Two Residences
9/12/66
2/23/67
32,500.
3,610.
Constructed
1967
Apartment Building
2/2/67
8/14/67
47,000.
5,279.
Constructed
1967
1968
Apartment Building
8/16/67
10/8/68
69,500.
8,408.
Constructed
3/25/68
1969
Residence
7/16/68
3/6/69
32,971.
1,966.
Constructed
1970
Apartment Building
5/69
3/70
92,000
11,918.
Constructed
Residence
9/16/69
2/2/70
25,000
3,618.
Constructed
1971
Apartment Building
5/12/70 (land)
3/15/71
72,000
7,677.
Constructed
Residence
11/16/70 (land)
4/20/71 25,000
3,744.
Constructed
Totals
$777,772
$100,351
*22 The record shows that for 10 of the 12 years covered by the above schedule petitioner's income from other sources averaged approximately $9,100 a year. Petitioner has owned no construction equipment but for approximately 10 years prior to the trial herein and during the year in issue he has employed a foreman to work on and supervise whatever building was then in the process of construction. The man usually so employed was Albert Waters. During the average year the foreman was employed full time for between 3 and 6 months. During this same 10-year period petitioner devoted between one-third and one-half of his time to the affairs of the bank with the remainder being spent on his own construction projects. In petitioner's 1968 Huntington, West Virginia, annual business and occupation "gross sales" tax return, he listed his occupation as "builder-rents" and on petitioner's 1968 Federal income tax return he listed his occupation as banker and contractor. As of December 31, 1968, petitioner did not own any apartment buildings. On September 26, 1967, petitioner purchased an improved lot at 536 Sixth Avenue, Huntington, West Virginia, and immediately thereafter demolished *23 the residence located thereon. On about November 1, 1967, he commenced construction of the six-unit apartment building here in issue, and construction was completed on March 25, 1968. Shortly before that last date petitioner had placed a for sale sign on the property. The six apartment units had all been rented by the end of April 1968 and on April 16, 1968, petitioner had listed the building for sale with Pancake Realty Company at an asking price of $69,500. On August 31, 1968, a purchaser was secured at that price and a deed to the property was given to the purchaser on October 5, 1968. The above sale generated a net profit of $10,412.48 for which petitioner claimed section 1202 [1] capital gains treatment. This was disallowed by respondent's determination on the basis that the property was "held for sale to customers in the ordinary course of your trade or business." OPINION Petitioner's position is that the apartment building in issue had been constructed and was being held by him as a capital asset for investment. But section 1221 of the 1954 Code defines capital asset - means property held by *24 the taxpayer (whether or not connected with his trade or business), but does not include - (1) * * * , or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business; [Emphasis supplied.] The Supreme Court has stated in : The purpose of the statutory provision with which we deal is to differentiate between the "profits and losses arising from the everday operation of a business" on the one hand ( and "the realization of appreciation in value accrued over a substantial period of time" on the other. ( .) A literal reading of the statute is consistent with this legislative purpose. We hold that, as used in section 1221(1), "primarily" means "of first importance" or "principally." Consequently, we must determine from the facts, and under the above definition, the "primary" purpose of petitioner's holding of the apartment building in issue at the time of its sale. . This is a question of fact. *25 , affd. (C.A. 6, 1960); and consequently, we have given a rather full exposition of the facts which are relevant to this question. Petitioner's position seems to be that since he was regularly employed as a director and vice president of the Security Bank of Huntington that he could have no other business. But we have held many times that a person may be simultaneously engaged in two or even more businesses. As we said in , "it is also unimportant whether petitioner may have been in the real estate business completely or only to some extent." See also ; and , affd. (C.A. 10, 1952), and cases there cited. An examination of the many reported cases which deal with the identical fact issue here being considered reveals that the objective elements considered most often in the resolution of this question of subjective purpose are: (1) The taxpayers purpose in acquiring and in disposing of the property; (2) The continuity *26 of sales or sales-related activity over a period of time; (3) The number and frequency of sales; (4) The substantiality of sales; (5) The extent to which the taxpayer engaged in sales activities by developing or improving the property, soliciting customers and advertising; and (6) The length of time the property was held. Applying these criteria to the facts in the instant case leads us overwhelmingly to the conclusion that petitioner's "primary" purpose in the holding of the apartment building in issue at the time of the sale ( ) was to sell it to a customer in the ordinary course of his trade or business. We perceive no useful purpose in further discussion or analysis of those facts. Consequently, Decision will be entered for the respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954. ↩